J-S40016-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| LEROY MALDONODO | |
| Appellee | No. 1191 EDA 2015 |

Appeal from the Order Entered March 25, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003453-2014

BEFORE:  BOWES, J., MUNDY, J., and MUSMANNO, J.

MEMORANDUM BY MUNDY, J.:                          **FILED JULY 14, 2016**

The Commonwealth appeals from the March 25, 2015 order granting the motion for discovery sanctions filed by Appellee, Leroy Maldonodo.  After careful review, we affirm.

We summarize the relevant factual and procedural history of this case as follows.  On April 2, 2014, the Commonwealth filed an information, charging Appellee with two counts each of robbery, theft by unlawful taking, possession of an instrument of a crime, terroristic threats, and simple assault.[1]  As part of discovery, Appellee sought disclosure of, *inter alia*, any electronic surveillance and transcripts thereof.  Appellee's First Motion for Discovery Sanctions, 2/8/15, Exhibit 1, at 2.  On February 8, 2015, Appellee

---

[1] 18 Pa.C.S.A. §§ 3701(a)(1)(ii), 3921(a), 907(a), 2706(a)(1), and 2701(a), respectively.

filed a motion for discovery sanctions, specifically alleging the Commonwealth failed to timely turn over 466 prison phone call recordings of Appellee, which were in Spanish. On February 10, 2015, after hearing argument, the trial court denied Appellee's motion for sanctions, but granted a continuance to permit the Commonwealth the opportunity to translate the prison tapes to English. Relevant to this appeal, the Commonwealth told the trial court that "in the meantime, [it would] have these tapes officially transcribed by a certified translator, not from the court, and provide a copy to [defense c]ounsel[.]" N.T., 2/10/15, at 21. Based on this promise, the trial court stated the translated transcripts "have to be passed [to defense counsel] three weeks prior to trial because [it] want[ed] to make sure there [was] enough time for the transcription to be completed and done right so that [defense counsel could] review it." *Id.* at 22. The trial court set a new listing date of April 7, 2015. *Id.* at 23. The docket contains an entry listing an "Order Granting Motion for Continuance," which stated, relevant to this appeal, that the "Commonwealth [was] to get prison calls transcribed and passed to [d]efense 3 weeks prior to trial." Trial Court Docket at 6.

On March 20, 2015, Appellee filed another motion for discovery sanctions, alleging that the Commonwealth had not complied with the trial court's previous order. On March 25, 2015, the trial court heard argument on Appellee's motion, and entered an order granting the motion and precluding the Commonwealth from introducing the prison tapes into

evidence at trial. The Commonwealth filed a motion for reconsideration on April 1, 2015, which the trial court denied on April 10, 2015. On April 24, 2015, the Commonwealth filed a timely notice of appeal.[2]

On appeal, the Commonwealth raises one issue for our review.

> Did the trial [court] abuse its discretion in suppressing audio recordings of [Appellee]'s telephone calls made in prison unless the Commonwealth also translated the calls from Spanish to English and created translated transcripts of the recorded statements?

Commonwealth Brief at 4.

The Commonwealth argues that the trial court erred in several respects. Succinctly, the Commonwealth avers that the trial court's February 10, 2015 order does not direct it to transcribe all 466 tapes, rather, it directs the transcription of only two of them. Commonwealth's Brief at 11. The Commonwealth also claims that its representations resulting in said order do not constitute a binding agreement. *Id.* at 12. Moreover, the Commonwealth states that even if such an agreement did exist, it substantially complied when it turned over partial transcriptions by police detectives. *Id.* at 11. Finally, the Commonwealth argues that the trial

---

[2] The Commonwealth certified in its notice of appeal that the trial court's order would substantially handicap its prosecution pursuant to Pennsylvania Rule of Appellate Procedure 311(d). Concurrently with its notice of appeal, the Commonwealth filed a concise statement of errors complained of on appeal pursuant to Rule 1925(b), although the trial court had not ordered it to do so. The trial court issued its Rule 1925(a) opinion on September 17, 2015.

court's sanction of exclusion was disproportionate, and that an additional continuance was warranted. *Id.* at 16-17.

At the outset, we note, "we review a trial court's order awarding sanctions under an abuse of discretion standard." **Commonwealth v. Jordan**, 125 A.3d 55, 65 (Pa. Super. 2015) (*en banc*) (citation omitted). Pennsylvania Rule of Criminal Procedure 573(B)(1)(g) requires that the Commonwealth turn over to the defense, upon its request "the transcripts and recordings of any electronic surveillance, and the authority by which the said transcripts and recordings were obtained." Pa.R.Crim.P. 573(B)(1)(g).[3] Furthermore, Rule 573(E) permits the trial court to grant a motion for sanctions.

> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such

---

[3] We reject the Commonwealth's assertion that recorded prison phone calls are not "electronic surveillance" under Rule 573(B)(1)(g) and that "[Appellee] had equal access to the prison recordings." Commonwealth's Brief at 17; *see also Commonwealth v. Hanford*, 937 A.2d 1094, 1100 (Pa. Super. 2007) (discussing Rule 573(B)(1)(g) in the context of a "telephone conversation with a defense witness, recorded while he was in jail prior to trial[]"), *appeal denied*, 956 A.2d 432 (Pa. 2008). **Hanford** also rejected the arguments forwarded by the Commonwealth that Rule 573 was not violated because the defendant was "advised that [his] calls [were] being recorded[]" and because "the defendant [was] aware of the material in question[.]" *Id.* at 1101.

other order as it deems just under the circumstances.

Pa.R.Crim.P. 573(E). Concerning the form of any relief to be granted, our cases have held that Rule 573(E) contains a requirement of proportionality. That is to say, "the remedy in the criminal proceeding is limited to denying the prosecution the fruits of its transgressions." ***Jordan***, ***supra***, *quoting **In re York Cnty Dist. Attorney's Office***, 15 A.3d 70, 73 (Pa. Super. 2010).

We first address the Commonwealth's assertion that it only offered to transcribe the two tapes it intended to introduce, not all 466 tapes. Commonwealth's Brief at 9. Conversely, the trial court's opinion appears to indicate that it believed the Commonwealth volunteered to translate all 466 tapes, and that such transcription was required by its directive. Trial Court Opinion, 9/17/15, at 4-5.

At the February 10, 2015 hearing, the Commonwealth informed the trial court and Appellee it had 466 phone call recordings in its possession, and gave Appellee a partial transcription, made by the assistant district attorney (ADA), so that Appellee could "know exactly what [was] on the two phone calls that [it] wanted to introduce." N.T., 2/10/15, at 15. At the hearing on Appellee's initial motion for sanctions, the following exchange occurred.

> The Court: Okay. At this time I am going to deny [Appellee's] sanctions motion, and I will allow you a continuance so that you can have time to review the tapes.

…

[Commonwealth]: Your Honor, in the meantime, I'm going to have these tapes officially transcribed by a certified translator, not from the court, and provide a copy to [Appellee] in the meantime.

I would obviously ask for the fastest date possible. I know [the trial court has] a busy calendar. I think it would take me no more than 30 days to get these transcribed.

…

[Defense Counsel]: I would ask the tapes to be provided 60 days prior to trial, the transcripts.

The Court: We're just going to give it a regular date because I don't know if he can send it to you 60 days prior if we give it a shorter date.

[Defense Counsel]: If we have a short date, your Honor, could it be 30 days prior to trial?

[Commonwealth]: That's fine.

The Court: Okay. [L]et's see if we can find a date.

What I'm going to say is that they have to be passed three weeks prior to trial because I want to make sure there is enough time for the transcription to be completed and done right so that you can review it.

[Defense Counsel]: Your Honor, the reason that I'm asking that it be Commonwealth time is because they are the ones that want to use the tapes. This is their evidence.

The Court: I understand. And you want to review all the tapes because there may be something in there that you may want to use. I understand your

argument. But it's not going to be marked Commonwealth time.

…

The Court: … What date did you give it?

Court Crier:    4/7.

*Id.* at 21-23.

Based on the above excerpt, we agree with the Commonwealth that the trial court's assertion that the Commonwealth agreed to transcribe all 466 tapes is not supported by the record. As highlighted above, the Commonwealth had turned over a partial transcription by the ADA of the two calls it planned to introduce into evidence. In our view, the transcript reveals that when placed in context, the Commonwealth's statement, that it would "have **these** tapes officially transcribed," refers to the two tapes it referenced in its argument to the trial court.[4] *Id.* at 21 (emphasis added).

---

[4] The Commonwealth argues that Rule 573 does not require it to affirmatively create transcripts as part of discovery. ***See generally*** Commonwealth's Brief at 14-15; ***Commonwealth v. Robinson***, 122 A.3d 367, 373-374 (Pa. Super. 2015) (stating, "the general rules … did not grant the [trial] court inherent rule making authority or the discretionary power to order the Commonwealth to prepare written transcripts in addition to the video copies of the interviews [in question]"), *appeal denied*, 130 A.3d 1289 (Pa. 2015). While we agree with the Commonwealth that the Rule does not generally require transcripts be created in discovery, we cannot ignore the certified record in **this** case, which reveals the Commonwealth elected to volunteer to have two of the tapes transcribed. ***See generally*** N.T., 2/10/15, at 21.

This view is reinforced by the timeline established by the trial court of setting the next trial listing for April 7, 2015. Under the trial court's directive, the Commonwealth would have had to turn over any transcripts no later than March 17, 2015. As the Commonwealth points out, this was "perhaps a plausible timeframe for the two relevant conversations, which totaled approximately six minutes, but outstandingly implausible if the Commonwealth was supposed to produce more than 93 translations a week for five weeks."[5] Commonwealth's Brief at 12. Based on these considerations, we conclude that the Commonwealth only volunteered to transcribe two of the tapes.[6] To the extent the trial court's preclusion order applies to the remaining 464 tapes, any issue pertaining to the same is

_____

[5] Appellee also acknowledges, "the Commonwealth promised to have a certified translation done **of the conversations it wished to offer** …." Appellee's Brief at 9 (emphasis added); **see also id.** at 13 ("stating, "the Commonwealth … asserted that it would have the two recordings transcribed by an official translator[]").

[6] To the extent the Commonwealth argues that there is no binding agreement in this case due to lack of consideration, we note that the Commonwealth did not raise this argument in the trial court. Appellee's response to the Commonwealth's motion for reconsideration specifically argued that "the Commonwealth … ultimately agreed to transcribe the tapes, and have it done so by a neutral party." Appellee's Response to the Commonwealth's Reconsideration Motion, 4/5/15, at 11. The Commonwealth did not argue at the April 10, 2015 reconsideration hearing that there was no binding agreement, for want of consideration or otherwise. As a result, we deem this argument waived on appeal. **See generally** Pa.R.A.P. 302(a).

moot, as the Commonwealth has consistently maintained throughout the case that it never intended to utilize those other tapes at trial.

The Commonwealth next argues that after it volunteered to have the two conversations transcribed, it decided that it was unable to do so because it "wouldn't pay [the translator's] fee[.]" N.T., 3/25/15, at 4. Therefore, instead, the Commonwealth enlisted two police detectives to translate and transcribe the relevant tapes, and said transcriptions would be turned over when completed. *Id.*; Commonwealth's Brief at 11. The Commonwealth therefore argues that it substantially complied with the trial court's order as it understood it. Commonwealth's Brief at 11.

In *Commonwealth v. Hemingway*, 13 A.3d 491 (Pa. Super. 2011), the Commonwealth appealed from an order "precluding 34 of the Commonwealth's witnesses from testifying at the trial … as a result of the Commonwealth's failure to provide the defendants with transcripts of the witnesses' grand jury testimony in accordance with an agreement reached on February 27, 2009." *Id.* at 493. Relevant to this appeal, the Commonwealth in *Hemingway* argued that the trial court abused its discretion in precluding the witnesses' testimony because it "substantially complied with the terms of the February 27 order" and because the sanction was disproportionate. *Id.* at 502. The Commonwealth acknowledged that it was supposed to turn over the transcripts in question by July 6, 2009, but did so four days later on July 10, 2009. *Id.* We concluded that the trial

court abused its discretion in precluding the testimony on the following grounds.

> The record reflects that the attorney representing the Commonwealth intended to comply with the February 27 order, but erroneously believed that the grand jury testimony was to be provided to defense counsel on July 9, not July 6. The Commonwealth provided the transcripts on July 10—four days after the ordered deadline; one day past the deadline the Commonwealth erroneously believed was set by the trial court—which was late, but in advance of trial nonetheless. The Commonwealth also offered to provide defense counsel with the order in which it would call its witnesses to afford defense counsel more time to review the witnesses' testimony prior to each day of trial.
>
> The February 27 order was borne out of an attempt to streamline the trial. Defense counsels' receipt of the transcripts in advance of the witnesses' testimony, coupled with the Commonwealth's offer to provide defense counsel with an ordered witness list, would accomplish that goal and would have resulted in substantial compliance with the agreed upon order. Moreover, it was clearly not the intention of the trial court to terminate the prosecution when it enforced its order precluding the 34 witnesses from testifying.
>
> This does not mean that a trial court cannot preclude evidence or testimony when a binding agreement is reached between the parties, the parties have actual knowledge of the sanction that is to be employed for failing to abide by the terms of the agreement, and one or more of the parties abjectly refuse to comply. However, the record does not support such a finding in the instant case.
>
> Therefore, we agree with the Commonwealth that the decision of the trial court to preclude the testimony of the 34 witnesses must be reversed because the Commonwealth **substantially**

> **complied** with the terms of the pretrial conference
> order of February 27, 2009[.]

*Id.* at 502-503 (emphasis added).

Turning to this case, the record reveals, as noted above, that the Commonwealth told the trial court that it would obtain transcripts from a certified translator. N.T., 2/10/15, at 21. However, after the hearing, the ADA assigned to the case "reached out to an official transcriber with the Commonwealth of Pennsylvania and [the ADA's] office wouldn't pay his fee[.]" N.T., 3/25/15, at 4. In an effort to comply, the Commonwealth had "Detective Rivers and Detective Diaz who are both fluent in both languages" translate the two calls in question.[7] *Id.* at 4-5. The ADA stated that "the only impediment [to its full compliance was] … the cost … of the transcribing or [of] … farm[ing] it out to another person." *Id.* at 5. The ADA continued that "[t]hree days after [the trial court] asked [him] to do this, [he] went through the process, [and] took it all the way up to [the] trial deputy to try to resolve this issue, he said no, so as soon as he said no, [the ADA] got the wheels in progress to try to get [the] detectives on board." *Id.*

In our view, the trial court was within its discretion to order the sanction of preclusion in this case. As noted above, in *Hemingway*, this Court concluded that the Commonwealth substantially complied because even though it was late in providing the grand jury transcripts, it did provide

---

[7] The Detectives' first names are not included in the certified record.

them to the defense and "in advance of trial[.]" ***Hemingway***, ***supra*** at 502. In this case, the Commonwealth agreed to "have these [two] tapes officially transcribed by a certified translator … and provide a copy to [Appellee.]" N.T., 2/10/15, at 21. Unlike ***Hemingway***, the Commonwealth was not merely late in its compliance, but rather the Commonwealth reneged, because the Commonwealth "reached out to an official transcriber … and [the Commonwealth] wouldn't pay his fee[.]" N.T., 3/25/15, at 4. It is not disputed that neither Detectives Rivers and Diaz, nor the ADA, is a certified translator. In addition, the record reveals that the partial transcriptions the Commonwealth did turn over were incomplete, due to some words and phrases that the ADA could not translate. N.T., 3/25/15, at 6; Commonwealth's Brief at 6.

In ***Hemingway***, we clarified that our holding did not mean that "a trial court cannot preclude evidence or testimony when a binding agreement is reached between the parties, the parties have actual knowledge of the sanction that is to be employed for failing to abide by the terms of the agreement, and one or more of the parties abjectly refuse to comply." ***Hemingway***, ***supra*** at 503. Here, the Commonwealth agreed to procure translations of the two phone calls by an independent certified translator after it faced a motion for discovery sanctions seeking to preclude their admission. As a result of that agreement, the trial court declined to preclude the tapes, and instead granted a continuance so the parties could carry out

the agreement. However, the Commonwealth refused to comply when it balked at paying the costs of fulfilling its own promise. This is the type of situation we contemplated in our caveat in **Hemingway**. We therefore conclude the Commonwealth has not substantially complied in this case.

In addition, we reject the Commonwealth's assertion that once it became apparent that it would not comply, the onus fell on the trial court to grant another continuance. Although a continuance would have been warranted if the Commonwealth needed additional time, this is not the case. The Commonwealth outright refused to pay the cost of the certified translator; therefore, no number of continuances would have sufficed, because the Commonwealth was not going to pay the fees to translate the relevant phone calls. Therefore, we conclude that in this case, the "trial court [could] preclude evidence[.]" **Hemingway**, **supra**.

Based on the foregoing, we conclude that the trial court did not abuse its discretion when it precluded the Commonwealth from introducing the tapes in question. **See id.** Accordingly, the trial court's March 25, 2015 order is affirmed.

Order affirmed.

Judge Musmanno joins the memorandum.

Judge Bowes files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/14/2016