J-S40016-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| LEROY MALDONODO | |
| Appellee | No. 1191 EDA 2015 |

Appeal from the Order Entered March 25, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003453-2014

BEFORE:  BOWES, MUNDY AND MUSMANNO, JJ.

DISSENTING MEMORANDUM BY BOWES, J.:            **FILED JULY 14, 2016**

I respectfully dissent from the learned majority's affirmance of the discovery sanction levied by the trial court. Due to the confusion surrounding the translation of the tapes in question, which the majority acknowledges in its memorandum, I agree with the Commonwealth that the imposed sanction of preclusion of the tapes was disproportionate to its offensive conduct. Accordingly, I would reverse.

This Court reviews "a trial court's order awarding sanctions under an abuse of discretion standard." **Commonwealth v. Jordan**, 125 A.3d 55, 65 (Pa.Super. 2015) (*en banc*) (citation omitted).  Nevertheless, we must recall that "[w]hile the trial court is accorded discretion to sanction a party who violates an order, there are limits upon the sanctions that a trial court can

impose." *Id*. Critically, this Court has held that the appropriate sanction in a criminal case for a violation of discovery rules by the Commonwealth is to deny the prosecution "the fruits of its transgressions." *Id*. (quoting *In re York County Dist. Attorney's Office*, 15 A.3d 70, 73 (Pa.Super. 2010)).

In the present case, the Commonwealth's transgression was failing to abide by its voluntary proposal to "have [the] tapes **officially** transcribed by a **certified** translator, not from the court." N.T. Motion, 2/10/15, at 21. There is no doubt, and Appellee does not contest, that the Commonwealth did, in fact, provide Appellee with all original recordings of the prison calls, which were in Spanish. Appellee obviously speaks the language and knew what the tapes said. While the Commonwealth agreed to provide the English transaction, the Commonwealth made attempts perform that action. Before the trial court heard any arguments regarding the recordings, the assistant district attorney gave Appellee a partial transcription of the two relevant phone calls, *i.e.*, the ones that included statements by Appellee indicating his involvement in the crimes charged against him.

Following the prosecutor's voluntary proposal to have the tapes officially transcribed, the trial court granted a continuance. In addition, the trial court ordered the Commonwealth to have prison calls transcribed in English, and handed over to Appellee at least three weeks before trial. The trial court reports that its order pertained to all the prison tapes involving

Appellee while the Commonwealth counters that it offered to transcribe only the two tapes it intended to use at trial.

The majority agrees with the Commonwealth that it was only required to transcribe the two inculpatory tapes and characterizes the offer as a binding agreement. That conclusion furthers the confusion involved in this case. While it appears as if the Commonwealth was under the impression that it was only ordered to provide Appellee with transcripts of the two phone calls it wished to use, the trial court maintained its order pertained to all 466 phone calls. *See* Appellant's Brief at 11-12; *See also* Trial Court Opinion, 9/17/15, at 4, 8-9.

In affirming, the majority reasons that the record does not support the trial court's assertion, and rules the Commonwealth was only mandated to provide Appellee with transcriptions of two phone calls. Thus, even though the majority acknowledges the confusion created by the trial court's order, it still finds the sanction which precluded the use of the tapes to be a proper exercise of the trial court's discretion. This affirmance simply does not appropriately account for the facts of the case.

Following the trial court's order, the assistant district attorney made efforts to transcribe the tapes but was unable to obtain an official transcriber since the district attorney's office refused to pay the fee. Thereafter, the assistant district attorney enlisted the help of two Spanish speaking detectives to translate and transcribe the tapes.

At the second hearing for discovery sanctions, the prosecutor informed the trial court of the situation and offered to provide Appellee with the transcriptions once they were finished. Therefore, the record shows that the attorney in question did not maliciously withhold evidence from Appellee. In fact, the Commonwealth made reasonable attempts to provide Appellee with the transcripts of his own prison phone conversations, which the law does not strictly require. **See Commonwealth v. Robinson**, 122 A.3d 367, 373-4 (Pa.Super 2015) (declaring Pa.R.Crim.P. 573 does not positively require the Commonwealth to provide transcripts when the evidence has been disclosed and made available to the defense). The *de minimus* nature of the Commonwealth's infraction is compounded by the fact that Appellee speaks Spanish and could readily translate for himself all of the recordings.

The majority analyzes only one case to support its conclusions. In **Commonwealth v. Hemingway**, 13 A.3d 491 (Pa.Super 2011), this Court held that the trial court's preclusion of grand jury testimony from thirty-four witnesses was too severe because the Commonwealth "substantially complied" with the trial court's discovery order to supply transcripts and preclusion would "substantially hamper the prosecution." **Id**. at 503. In that case, the Commonwealth conformed to the order, but did so four days late. **Id**. at 502. The majority is correct in noting that in the case *sub judice*, the Commonwealth was not merely late in compliance, but it did not fulfill its

offer to have the tapes officially transcribed. Majority Memorandum at 12. However, reliance upon **Hemingway** alone is questionable.

To bolster its affirmance of the trial court's preclusion order, the majority relies on a *caveat* from **Hemingway**, stating a trial court may still, "preclude evidence or testimony when a binding agreement is reached between the parties, the parties have actual knowledge of the sanction that is to be employed for failing to abide by the terms of the agreement, and one or more parties abjectly refuse to comply." **Id**. (quoting **Hemingway**, **supra** at 503).

In my view, reliance on this language is misguided. First, the assertion that the parties reached a binding agreement is tenuous at best. "A binding agreement exists where all parties come to a meeting of the minds on all essential terms of the agreement." **Mastroni-Mucker v. Allstate Ins. Co.**, 976 A.2d 510, 518 (Pa.Super. 2007). Herein, there was simply an offer to have an official translator; Appellee never requested that action. Moreover, the Commonwealth was not, as noted, mandated to undertake that action.

Next, as discussed **supra**, the record does not support the conclusion that the Commonwealth "abjectly" refused to comply with the trial court's order. The Commonwealth made multiple attempts to transcribe the tapes, all the while subject to an ambiguous discovery order. Perhaps if the Commonwealth knew exactly what the trial court expected of it, compliance

would have been obtainable. Accordingly, this case does not present us with a situation contemplated in our *caveat* in **Hemingway**.

Furthermore, this Court has avowed, "[a] continuance is appropriate where the undisclosed statement or other evidence is admissible and the defendant's only prejudice is surprise." **Commonwealth v. Smith**, 955 A.2d 391, 395 (Pa.Super. 2008) (citation omitted). Indeed, a continuance is an adequate remedy in the majority of cases. **Id**. (citation omitted). Herein, we are not presented with a situation where the Commonwealth has failed to disclose material evidence. The Commonwealth disclosed the recordings to Appellee, and Appellee had the opportunity to review his prison phone calls and prepare a defense since he understood their contents.

Consequently, Appellee has presented no proof of prejudice, through surprise or otherwise, and the majority fails to address this fact. The only cognizable prejudice created in this matter stems from the Commonwealth's loss of incriminating statements made by Appellee. Such evidence obviously is invaluable at trial. Under these circumstances, it was unreasonable for the trial court to preclude the admission of the inculpatory tapes given their probative value.

In conclusion, a careful review of the record exposes that the trial court's preclusion of the tapes in question was a clear abuse of discretion. Not only did the trial court issue a confusing order, but it also levied a punishment which did not fit the crime. The Commonwealth's loss of

inculpatory phone recordings, when it made reasonable efforts to transcribe the recordings out of its own good will, epitomized far more than a denial of the fruits of its transgressions.  Hence, I dissent.